20689. ATLANTA TITLE & TRUST COMPANY *v.* INMAN.

DECIDED OCTOBER 7, 1930.

*Tye, Thomson & Tye,* for plaintiff in error.

*Spalding, MacDougald & Sibley, Estes Doremus,* contra.

LUKE, J.   E. H. Inman brought an action against Atlanta Title and Trust Company on a policy of insurance indemnifying plaintiff against loss sustained "by reason of defects of title" in certain real estate purchased by him, "or by reason of liens or encumbrances charging the same  .  .  subject to the conditions and stipulations hereto annexed and made a part of the policy."   One of said stipulations is, that "this company will not be liable for loss or damage by reason of mechanic's liens, alimony, or other matters not filed or recorded at the date hereof."   The petition alleges: that at the time said property was purchased by plaintiff there was a lien or encumbrance against it for $780 principal and $73.65 interest; that plaintiff paid off this lien on March 16, 1927; "that said lien or encumbrance arose by virtue of the creation of the Madison Avenue Taxing District of the City of Atlanta, and by the levy by said city against said property of a tax in the sum aforesaid; that immediately upon ascertaining the existence of said lien or encumbrance, petitioner immediately notified defendant and requested it to hold him harmless against said claim, but that it refused to do so; that petitioner then brought suit against the City of Atlanta at an expense of $100 in an attempt to avoid the payment of said assessment; and that defendant is indebted to petitioner in the sum of $935.65, with interest thereon at the rate of seven per cent. per annum.   The gist of the answer is that "said claim of the City of Atlanta was not a lien at the date of the policy, but became a lien after the policy was issued, and therefore was not covered by the policy."

The case was submitted to the court, without the intervention of a jury, upon an agreed statement of facts which is substantially as follows:

On September 11, 1925, the policy of insurance covering said property was issued as alleged. Inman purchased the property, and on September 28, 1925, was served with notice by said city of said assessment against the same. Said assessment was paid by Inman on March 16, 1927. Defendant "refused to pay same, claiming that the lien did not arise until after the issuance of the policy." "In 1921 the City of Atlanta was authorized by charter amendment to zone and levy and assess the property owners thereof." A prior amendment to the charter of the City of Atlanta (Ga. L. 1919, p. 831) contains this provision: "The lien of all assessments made by the City of Atlanta in its favor for all improvements levied against abutting property or abutting property owners, such as for paving, guttering, curbing, sidewalks, sewers, water and sewer connections, including repaving, repairs, and reconstruction of any and all of the items just named, and any and all other like assessments made by the City of Atlanta, in its favor, shall attach and become fixed on the date of the entry of the completion of such work in a book prepared therefor by the City Comptroller and kept in his office." "The City of Atlanta, by resolution adopted February 2, 1925, appointed Street Committee of Council as the Board of Viewers for the extension of Madison Avenue in the City of Atlanta." On May 4, 1925, the City of Atlanta, "under authority of the Acts of 1921, heretofore referred to, passed an ordinance establishing a taxing district which included the property covered by the policy hereto attached." All the recitals in the certified copy of said ordinance hereto attached are admitted to be true. Said resolution and said ordinance "were on file and of record in the Minute Book in the office of the Clerk of Council of the City of Atlanta on the dates of the approval of same by the Mayor of the City of Atlanta." "The work on Madison Avenue was begun the latter part of May, 1925, and completed on the 28th day of September, 1925. The completion of the work was entered on the books in the office of the Comptroller on the 28th day of September, 1925." The defendant having refused to pay said assessment, which amounted to $853.65, including $73.65 interest, it was paid off by Inman on March 16, 1927, after he had contested the legality of the assessment by injunction proceedings, which were decided adversely to him, at a cost of $100. "No dispute is made as to the correctness of the bill rendered by the city, nor as to the

authority of the city to make the improvements, the only question being as to whether or not the policy in question made the title company responsible to Mr. Inman for the amount sued for."

We quote the following from the charter amendment of 1921 (Ga. L. 1921, sec. 1-G, p. 668): "That the Mayor and General Council of the City of Atlanta are hereby authorized and empowered to acquire land for street purposes, either in widening existing streets or extending existing streets, and to assess all or any part of the cost of obtaining same upon property located in an assessment district therefor in proportion to the benefits to the land located therein." This act further provides that the committee on streets be appointed "viewers" to indicate to the chief of construction the land to be affected, and that said chief of construction shall make a map of said property and submit same to said committee for revision. The act then provides: "When this map has been perfected same shall be reported back to council and an ordinance adopted establishing a taxing district for the widening, opening, or extension of the named street, and for the assessment of all or any part of the cost thereof by the viewers designated therein upon the land in such taxing district in proportion to the benefits thereto." The act provides, however, that such ordinance shall not be passed until "the committee on streets shall have a meeting and give all parties interested and who may desire to be heard, an opportunity to appear and oppose or favor the proposed improvement." Said section of said act concludes in this language: "After the Mayor and General Council, on report of this committee finally adopts an ordinance establishing a taxing district for the proposed improvement, . . and same is not stopped by injunction or other legal process, then the owners of property within such taxing district shall be concluded from further objection thereto either as to the form in which the work has been done or the map made or any other technicality connected therewith." Section 1-H of said act contains this provision: "If any property owner within such taxing district shall fail to pay the assessment on his property for such improvement, then the clerk of council shall issue a fi. fa. against said property and the owner thereof for the amount of the assessment, and the same shall be placed in the hands of the city marshal and collected in the same manner and form as other executions for taxes are collected."

The policy declared upon insures the property against "liens or encumbrances charging the same at the date of this policy." It is obvious that the word "encumbrance" includes the assessment in question. For a discussion of the meaning of that word, see *Kelly* v. *Stephens, 39 Ga.* 466. Neither does the assessment come within the exception comprising "mechanics' liens, alimony, or other matters not filed for record at the date" of the policy.

The act of 1919 and the act of 1921 are designed for different purposes, and operate in different ways, and we are satisfied that the provision of the former act, that the lien "shall attach and become fixed on the date of the entry of the completion of such work in a book prepared therefor by the City Comptroller and kept in his office," has no application to the charter amendment of 1921.

An ordinance was passed under the authority of said act of 1921 on May 4, 1925, and approved by the mayor the next day. This ordinance declared the assessments against the property in said taxing district "to be a lien on and upon the property against which they are assessed." It is true that this ordinance provided that a record of such liens should "be made in a book kept in the office of the comptroller of the City of Atlanta as is now provided by assessment for other street improvements in said city," but the lien had already been declared, and there is no provision that the recording of it was essential to its creation.

Our opinion is that the assessment was a lien against the property when said ordinance of May 5, 1925, was approved, and, consequently, that the lien was outstanding against the property when the policy of insurance was written on September 11, 1925.
*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*